**JAMS ARBITRATION CASE REFERENCE NO. 5470000205**

**FAIRWAY INDEPENDENT MORTGAGE CORPORATION**

**Claimant**

**and**

**JAMES STUART**

**Respondent.**

---

# FINAL AWARD

A virtual hearing was conducted in this matter on January 5, 2026, pursuant to written notice, and the following Award is entered with respect to this arbitration.

## Procedural History

The parties in this arbitration are Claimant Fairway Independent Mortgage Corporation ("Fairway") and Respondent James Stuart ("Stuart"). The parties' arbitration agreement appears in a document entitled "Alternative Dispute Resolution Agreement," which was filed in this matter on August 18, 2025. The agreement provides that "Employee and Company agree all legal disputes and claims between them will be determined exclusively by final and binding individual arbitration." ("Alternative Dispute Resolution Agreement," at 1). The controversy here concerns the alleged failure by Stuart to repay a sign-on bonus provided when he started work with Fairway. Therefore, the dispute is covered by that agreement. The undersigned Arbitrator, having been designated in accordance with that agreement, and having examined the submissions, proof, and allegations of the parties, finds, concludes, and issues this Award as follows:

Fairway submitted its "Arbitration Demand" on August 18, 2025. The parties participated in a Preliminary Conference with the undersigned on November 4, 2025. Following that conference the undersigned entered a Report and Scheduling Order No. 1. (*See* Scheduling Order No. 1, filed November 7, 2025). That Order memorialized the parties' agreement to allow limited discovery including serving up



EXHIBIT
5

to five requests for production of documents each and taking up to one deposition per side. (*See* Scheduling Order No. 1, at 3). It also provided the hearing would proceed virtually and set the time frame for filing pre-hearing briefs. (*Id.* at 3-4).

On December 29, 2025, each side submitted a pre-hearing brief along with accompanying documentary evidence. A hearing was conducted virtually on January 5, 2026. The parties stipulated to the admissibility of many documents[1] submitted by each respective side along with their pre-hearing briefs. In connection with the hearing, Fairway submitted a declaration from Jacob Appolini explaining the process used at Fairway for employees to review, sign and submit agreements. At the hearing, Fairway presented testimony from Brian Brooks, who is a Senior Vice President at Fairway. When given the opportunity, Stuart elected not to testify at the hearing, and he did not present any other witnesses. At the conclusion of the hearing the parties indicated they did not need to present any additional evidence. The undersigned set a deadline for post-hearing briefing for January 26, 2026. Fairway filed its post-hearing brief on January 26, 2026. (*See* Fairway's Post-Hrg. Br. And Exs., filed January 26, 2026). Stuart did not file his post-hearing brief within the time provided. Because a major winter storm had impacted the Nashville area, the undersigned *sua sponte* extended the deadline for post-hearing briefing up to and including February 4, 2026. (*See* Order Extending Time For Respondent To File Post-Hearing Brief, filed January 27, 2026). Stuart did not file a post-hearing brief within the extended time frame allowed by that Order. On February 5, 2026, the record closed. (*See* Order Closing The Record, filed February 5, 2026).

## <u>Facts</u>

The factual findings that follow are necessary to the Award. They are derived from admissions in the pleadings and the testimony and evidentiary exhibits presented at the hearing. To the extent that these findings differ from any party's positions, that is the result of determinations by the Arbitrator[2] as to credibility and relevance, burden of proof considerations, legal principles, and the weighing of the evidence, both oral and written. Additional facts may be discussed as required to address specific arguments raised by the parties.

---

[1] Fairway has objected to the admissibility of some of the exhibits submitted by Stuart. The consideration of those exhibits does not change the result reached here and therefore Fairway's objection to those exhibits is **OVERRULED** as moot.

[2] This award reflects an independent consideration of the arguments and the record evidence presented here, and it is noted that every single argument advanced by the parties has been considered, even if not expressly discussed herein.

This dispute arises out of Stuart's employment with Fairway. Stuart signed an employment agreement entitled "Branch Manager Compensation Plan" on May 1, 2024[3] whereby he accepted a position with Fairway. (*See* Exs. To Fairway's Post-Hearing Br., Ex. 1, filed January 26, 2026). That agreement memorialized that Stuart was to receive a $100,000 sign-on bonus. (*Id.*). It further provided that if Stuart left his employment with Fairway "voluntarily or involuntarily within 18 months" of receiving the bonus, that he was required to repay the entire sign-on bonus. (*Id.*). The relevant provision states as follows:

> **Sign-On Bonus.** Branch Manager will receive a sign-on bonus in the amount of **one hundred thousand dollars and zero cents ($100,000),** which will not be offset by Total Compensation. … *In the event Branch Manager's employment terminates, voluntarily or involuntarily, within eighteen (18) months of receiving the sign-on bonus, Branch Manager will be obligated to repay the sign-on bonus.*

(Branch Manager Compensation Plan, Ex. 1 to Fairway's Post-Hrg. Br., at 6) (emphasis in original)).

Stuart does not dispute that Fairway paid him the sign-on bonus as agreed. (*See* Stuart's Pre-Hrg. Br., at 5 ("Did I received the sign-on bonus, absolutely. Did I sign the agreement, yes, I did.")). In December 2024, Stuart resigned his position at Fairway.

Fairway wrote to Stuart seeking to recover the sign-on bonus asserting that the terms of the offer letter required Stuart to repay it. (Fairway's Pre-Hearing Br., Exs. 4-5 (Letters demanding repayment of the $100,000 sign-on bonus, Dec. 16, 2024 and Feb. 26, 2025)). Stuart did not repay the $100,000 sign-on bonus. This arbitration followed.

## Discussion

The lone claim at issue here is Fairway's claim for breach of contract based on Stuart's failure to repay the sign-on bonus. Tennessee law applies to this claim, as Fairway employed Stuart in Tennessee. Under Tennessee law, to prevail on a breach of contact claim, a claimant must show the following: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract,

[3] The agreement featured an effective date of April 15, 2024.

and (3) damages caused by the breach of the contract." *See Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.,* 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019). Fairway bears the burden of proof on its claim.

The Branch Manager Compensation Plain letter plainly and unambiguously sets out Stuart's obligation to repay the sign-on bonus to Fairway if he did not work there for the entire eighteen-month period. (Fairway's Post-Hrg. Br., Ex. 1, "Branch Manager Compensation Plan," at 6 ("*In the event Branch Manager's employment terminates, voluntarily or involuntarily, within eighteen (18) months of receiving the sign-on bonus, Branch Manager will be obligated to repay the sign-on bonus.*") (emphasis in original)). Stuart left his employment at Fairway only a few months after receiving the bonus, triggering the obligation to repay the entire $100,000 bonus. He did not repay the bonus, causing damage to Fairway. Under these circumstances, Fairway has established all the elements of its breach of contract claim, and it is due to recover the sign-on bonus unless one of Stuart's defenses applies. As explained below, Stuart's defenses do not apply.

Stuart made two arguments in his pre-hearing brief to try to excuse his failure to comply with the obligations of the Branch Manager Compensation Plan. First, he invoked the "first breach" doctrine as he suggested that Fairway failed to live up to its end of the bargain, thereby excusing his performance. Stuart's effort to rely on the first breach doctrine comes up short, both legally and factually. Tennessee recognizes the first breach doctrine. To use a breach by Fairway to excuse his non-performance, Stuart must show a material breach on the part of Fairway which was not cured before the time he breached the contract. *See Vraney v. Med. Specialty Clinic, P.C.,* No. W2012-02144-COA-R3-CV 2013 WL 4806902 at *27 (Tenn. Ct. App. 2013) ("the party that first materially breached a contract is 'not entitled to damages stemming from the other party's later material breach of the same contract.'"). In addition, he must show that he provided Fairway with notice of the breach and an opportunity to cure. *See Advanced Concrete Tools, Inc. v. Beach,* 2014 WL 1385868 (Tenn. Ct. App. 2014). He has done neither.

Stuart's pre-hearing brief suggested that Fairway failed to follow through on some efforts to engage with certain homebuilders to offer low introductory rates which could have improved his fortunes within the organization. Stuart examined Fairway's witness Brian Brooks regarding this program. First of all, nothing in the contract required Fairway to engage in any particular sales incentive programs, and certainly not the one described by Mr. Brooks. For this reason alone, there can be no breach of the contract based on failure to follow up with certain promotions for builders. Second, even if there had been some arguable breach of contract, nothing

in the record suggests that Stuart ever put Fairway on notice of *any* alleged breach before his failure to repay the sign-on bonus occurred. Finally, as a factual matter, Stuart produced no evidence of any breach of contract on the part of Fairway, much less a material one which was left uncured after notice. For each of these reasons, Stuart's reliance on the first breach doctrine is misplaced, and it does not excuse his breach of the repayment provision related to the sign-on bonus he received.

The other argument offered by Stuart fares no better. He suggests that his decision to resign was prompted by a change in his compensation which amounted to retaliation. He offers no legal justification to suggest that somehow when the parties amended the Branch Manager Compensation plan it excused him from repaying the bonus. The parties did amend their agreement several times to adjust his compensation structure, but each amendment plainly left intact all contract language about the sign-on bonus and Stuart's obligation to repay it if his employment stopped in fewer than eighteen months. (See, Fairway's Post Hrg. Br., Ex. 2, at 1 ("First Amendment To Branch Manager Compensation Plan" May 28, 2024, ("It is specifically understood by the parties that this 1st Amendment is solely for the purpose of the foregoing and is in no way intended to alter the other terms and conditions of the Plan [] in any other manner whatsoever."); Fairway's Post-Hrg. Br., Ex. 3, at 9 ("Branch Manager Compensation Plan, October 1, 2024[4] ("For the avoidance of doubt, this Plan does not supersede any bonus repayment language, if any, from Branch Manager's previous compensation plans or standalone agreements, which remain in effect as outlined in such documents.")). Nothing in the record supports a conclusion that the repayment provision in the first Branch Manager Compensation Plan was altered, so it remains binding on Stuart. The purported defenses identified by Stuart do not apply, and therefore they do not excuse his failure to repay the bonus.

Fairway has shown its entitlement to damages for breach of contract based on Stuart's retention of the $100,000 sign-on bonus despite the fact he left the company well within the eighteen-month period identified in the contract. His asserted defenses are not applicable, and these purported defenses do not excuse him from being obligated to repay the bonus. Accordingly, Fairway shall be awarded damages from Stuart for breach of contract in the amount of $100,000.

---

[4] This agreement contains a choice of law provision contemplating the application of Texas law. Claimant's submissions have shown that the law of Texas, were it to apply, is not meaningfully different than the law of Tennessee on the issues presented here and applying it here would lead to the same result reflected in this Award.

The undersigned notes that Fairway asserted claims for attorneys' fees, costs and interest in its original demand. (*See* Demand For Arbitration, filed August 18, 2025 at 1 ("Claimant seeks all available contractual, compensatory and actual damages as well as attorneys' fees, costs and pre- and post-judgment interest.")). The Scheduling Order made clear that "The issues of any amount of costs and the amount attorneys' fees shall be bifurcated and determined, if necessary, subsequent to the Phase I hearing. The entitlement to an award fees and costs shall be determined as part of the Phase I hearing." (*See* Scheduling Order No. 1). Claimant did not attempt to show its entitlement to fees or costs in its pre-hearing brief. (*See* Fairway's Pre-Hrg. Br.). Similarly, in its post-hearing brief it did not attempt to show an entitlement to fees or costs, and instead focused exclusively on recovering the sign-on bonus. (*See* Post-Hrg. Br., at 4 ("Stuart must repay the $100,000 sign-on bonus to Fairway")). Under these circumstances, with Fairway having elected not to pursue any claims for fees and costs, and certainly not having shown an entitlement to the same through the briefing process as contemplated by the Scheduling Order, it is appropriate to enter a Final Award in this matter.

## **AWARD**

Accordingly, this Final Award is entered as follows:

Fairway is entitled to recover $100,000 in damages from Stuart on its breach of contract claim.

This Final Award resolves all issues submitted for decision in this proceeding.

Dated : 2/24/2026 | 5:09 PM PST

Signed by:
J. Clay Fuller
57D44FDE4AA648F...

Hon, J. Clay Fuller (Ret.), Arbitrator

# SERVICE LIST

**Case Name:** Fairway Independent Mortgage Corporation vs. Stuart, James
**Reference #:** 5470000205
**Panelist:** Fuller, J. Clay ,

**Hear Type:** Arbitration
**Case Type:** Employment


**William S. Rutchow**

Ogletree Deakins

William S. Rutchow
401 Commerce St.
SunTrust Plaza - Suite 1200
Nashville, TN 37219
william.rutchow@ogletreedeakins.com

Claimant
Phone: 615-254-1900
Fax: 615-254-1908


**Party Represented:**
Fairway Independent Mortgage Corporation


**Olivia R. Schwab**

Ogletree Deakins

Olivia R. Schwab
401 Commerce St.
SunTrust Plaza - Suite 1200
Nashville, TN 37219
olivia.schwab@ogletree.com

Claimant
Phone: 615-254-1900
Fax: 615-254-1908


**Party Represented:**
Fairway Independent Mortgage Corporation


**James Stuart**

James Stuart
5107 Franklin Pike
Nashville, TN 37220
jamesedgarstuart@gmail.com

Respondent
Fax:


**Party Represented:**
James Stuart